# CHARLESTON.

## WOOD TAYLOR v. W. M. FIELDS.

Submitted April 18, 1922.        Decided April 25, 1922.

SET-OFF AND COUNTERCLAIM—*Amount Due on Subcontract Assented to by the Owner, Held Proper Set-Off in Owner's Action Against Sub-contractor.*

Where a person has a contract with the owner of a saw mill for hauling logs to his mill at a stated price per thousand feet, and agrees with another person that he may haul at least one half of the logs at the contract price, payment therefor to be made direct from the mill owner to such other person, which agreement is communicated to the mill owner and he assents thereto, and after the work has begun the mill owner assures such other person that he will pay him for his work, and makes part payment thereon, the sum due such other person is an individual and separate claim against the mill owner, and is a proper set-off to a debt asserted by the mill owner against him.

Error to Circuit Court, Roane County.

Action by Wood Taylor against W. M. Fields. A verdict was rendered for defendant, which was set aside on plaintiff's motion, and a new trial awarded, and defendant brings error.

*Reversed, and judgment for defendant.*

*Geo. F. Cunningham,* for plaintiff in error.

*H. C. Ferguson* and *Harper & Baker,* for defendant in error.

LIVELY, JUDGE:

The jury returned a verdict in favor of defendant for $31.80 which, on motion of plaintiff, was set aside and a new trial awarded, and defendant prosecutes this writ of error.

Plaintiff was operating a saw mill and employed E. T. Parsons to haul to his mill the saw logs in two hollows designated as the mill hollow, and the Willie Parsons hollow, at the price of $6.00 per thousand feet. Parsons engaged Fields,

the defendant, to help do the hauling, each to receive pay for
the number of feet hauled by him, and to divide the work
equally. It was understood between them, however, that de-
fendant should be paid by Parsons for the hauling done by
him. This arrangement was communicated to Taylor, the
plaintiff, by Parsons and the former assented to the arrange-
ment, but stated that he would make payment to Parsons
who could distribute the money as he pleased. The work
began, and some money was paid to Parsons who reported
the payment to defendant. After a portion of the logs were
hauled out of the Mill hollow, defendant concluded that he
could not afford to haul out of the Willie Parsons hollow at
$6.00 per thousand, as the work would be more difficult, and
announced his intention to quit. This was communicated to
plaintiff who agreed to pay $8.00 per thousand for the work
in the Willie Parsons hollow, on condition that the job in
the Mill hollow should be completed as contracted. During
the progress of the work defendant met plaintiff and made
some complaint that Parsons was being paid more than his
share of the hauling came to, and plaintiff assured him that
he would see that defendant was paid his part of the money
for hauling, and to go ahead with the work. Afterwards he
paid defendant $150.00 which was all that he received. Par-
sons was paid $300.00 for the hauling he did. The controlling
point in the litigation arises out of this controversy in the
logging agreement. It is contended by plaintiff that his con-
tract was with Parsons alone, and that defendant and Par-
sons were partners or joint contractors in the performance
of the contract and agreed between themselves to divide
equally the money paid to Parsons; and therefore if he, plain-
tiff, owed any money on the hauling, it was owing to Par-
sons, or owing to a partnership composed of Parsons and
defendant. On the contrary it is contended by defendant
that he did not look to Parsons for his pay per thousand, and
his compensation did not depend upon whether Parsons was
or was not paid, and it was so understood and agreed upon
between himself and plaintiff.

After defendant had been paid $150.00 on the hauling, and
after the mill had been shut down, he desired to purchase

some of the lumber on plaintiff's lumber yard, and in the month of June, 1920, applied to plaintiff for that purpose, who told him that no more would be paid on the hauling job until it was completed, and remarked, ''Some of these rainy days I will come over and see Parsons, and if it is satisfactory, I would just as soon let you people have lumber as money.'' A short time after this conversation defendant went to the mill yard, the mill not then being in operation, and hauled away several loads of lumber. Plaintiff was not present when the lumber was thus taken, and it was not then measured. A controversy arose over the amount of lumber taken, and this action was begun in March, 1921, before a Justice of the Peace. Plaintiff's claim is for 5,000 feet of lumber at $40,00 per thousand and $50.00 damages for taking the culls out of the lumber hauled away; practically $50.00 a thousand for 5,000 feet, in all $250.00. Plaintiff was selling his lumber at $40.00 per thousand including the good and bad as piled in the yard, and it was claimed that defendant had taken out the bad and hauled away the good only, hence the price of $50.00 per thousand instead of $40.00. A judgment was rendered by the Justice in favor of plaintiff, and an appeal taken to the Circuit Court, where new pleadings were made up and a trial had resulting in the verdict. Defendant filed as an offset his claim for hauling the logs as follows: 24,500 feet at $6.00 per thousand amounting to $147.00; 23,-000 feet at $8.00 per thousand amounting to $186.00; one gallon oil furnished plaintiff, 80 cents; two orders, each for $5.50, given by workmen who had cut timber for plaintiff and who had been paid by defendant, amounting to $11.00; in all the sum of $344.80, on which he credited the payment of $150.00 leaving a balance owing him from plaintiff of $194.80. Defendant admitted owing the sum of $126.90 for the lumber taken. The lumber, by actual measurement, was found to be 3,384 feet, and at $37.50, which defendant claims was the price, amounted to the above sum of $126.90. Plaintiff objected to the filing of this setoff for the reasons hereinbefore stated, but the court permitted it to be filed, and thereupon plaintiff filed, over objections of defendant, notice of recoupment for damages in the sum of $500.00

arising out of breach of the hauling contract. The parties then went to proof, resulting in the verdict of $31.80 in favor of the defendant. Much of defendant's brief (plaintiff in error) relates to alleged error of the trial court in permitting the notice of recoupment to be filed, and introduction of evidence in support thereof. The jury evidently decided that claim in favor of defendant, and it is not pertinent to the question here presented, that is, whether this verdict in his favor should or should not be sustained. The controlling question presented by this record is the ruling of the court in permitting defendant's sets-off to be filed and proven. A joint demand cannot be set off against a separate demand. *Perkins* v. *Hawkins,* 9 Grat. 650; *Choen* v. *Guthrie,* 15 W. Va. 102; 34 Cyc. 727. Under this well settled principle of the law of setoff plaintiff vigorously insists that error was committed, and the court was justified in awarding a new trial. But was defendant's claim for hauling a joint one with that of Parsons? While it is clear that the first agreement was made between plaintiff and Parsons and that Parsons afterwards procured defendant to help fulfill the contract, it is equally clear that plaintiff agreed to pay defendant for the logs he hauled, and induced him to continue in the work on that assurance. Plaintiff denies that he so promised and contended that he was to pay Parsons, or on Parson's order. He does not deny that he actually paid defendant the $150.00 but says it was done by direction of Parsons. On the other hand, Parsons, Fields the defendant, and other witnesses say that plaintiff agreed to pay direct to defendant for the work he did. We think the preponderance of evidence sustains defendant's version, and hence, his setoff is a separate and personal demand, and was properly filed. It makes little difference whether the promise to pay defendant was at the beginning or after his work had been partly performed. Plaintiff's action in paying the $150.00, and in paying another hauling charge to Tilden Ray for 14,000 feet hauled by him under the Parsons agreement; and in agreeing to pay in lumber in lieu of money, is strongly indicative that he recognized defendant's separate claim.

The record discloses that Parsons and defendant hauled about 49,000 feet at $6.00 per thousand and about 46,000 feet at $8.00 per thousand, amounting in all to $686.00, on which he paid $380.00 to Parsons (including payment to Tilden Ray) and $150.00 to defendant, leaving a balance which he yet owed to one or the other. Evidently he retained this balance until all of the logs were hauled and the contract completed, as he understood it, and this balance he attempted to cancel by recoupment without success before the jury. The hauling was begun in the winter months and by mutual agreement the mill was shut down, and the logging ceased in order that the parties might plant corn, and it was late in the summer when plaintiff desired to resume sawing; but Parsons refused to go back, claiming that the hauling had been about finished. It appears that Homer Mitchell was then hired by plaintiff to do hauling. It appears that there had been left about 12 or 14 logs in one of the hollows when the mill shut down in the spring, and Parsons says he helped take the logs out under Mitchell's contract, and having sold his team, requested defendant to help haul the remaining logs, which he did; but the work was done after this suit had been tried before the Justice. It is alleged as error that this part of the hauling was included in defendant's setoff, and not being due at the beginning of the suit, was improperly included therein. It is not clear that any charge was made for this work, or any account taken of it. Parsons says no work was done on the contract after they quit hauling in the spring, and defendant says he helped at the request of Parsons and for the latter's benefit. The amount would be small, and we do not think we would be justified in assuming that it was included in the setoff, or that it would have made substantial difference in the verdict, if it had been included. No instructions were asked for or given, and no errors assigned upon introduction or refusal of evidence. The parties have had a full and fair presentation of their respective claims to the jury, and we perceive no error which would warrant a new trial. We reverse the

judgment of the court setting aside the verdict, reinstate the verdict, and enter judgment thereon.

*Reversed, and judgment for defendant.*